UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CHRISTINA WHITEHURST, RAINELL OWENS,       CASE NO:
 NICOLE RICHARDSON, ERNEST DAVIDSON,    11-cv-0767 (CM)(RLE)
QIAWNI MICOU, LUCIEN METELLUS, DINA
GARDNER, JENNIFER DANIEL, TAKITA MASON,
ASIA SANDERS, GAIL RODRIGUEZ, MARIE ST.
AUDE, CLETUS HYACINTH, ELLIS WHITEHURST,
RALPH DEJEAN and LORRAINE STANFORD,

                         Plaintiffs,

     -against-

230 FIFTH, INC. and JOHN DOE (1-5),

                         Defendants.
-------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' VERIFIED COMPLAINT

Jesse M. Young, Esq
Bader Yakaitis & Nonnenmacher
350 Fifth Ave, Suite 7210
Tel: (212) 465-1110
Fax: (212) 692-0940

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................ 1

RELEVANT FACTS ......................................................................... 1

ARGUMENT .................................................................................. 4

I.   Plaintiffs have adequately pleaded their Section 1981 claim ........ 4

II.  Plaintiffs adequately pleaded their Section 2000a claim ........... 11

III. Plaintiffs adequately pleaded their Section 1985 and 1986 claims .. 12

IV.  Defendants do not challenge plaintiffs' breach of contract claim ... 12

V.   Section 1988 ................................................................... 13

VI.  Plaintiffs have adequately pleaded a cause of action under New York
     Civil Rights Law Section 40 et seq., New York Executive law Section 296 and the
     New York City Commission on Human Rights ........................... 13

VII. Request for leave to amend complaint ..................................... 14

CONCLUSION .............................................................................. 14

**TABLE OF AUTHORITIES**

**Cases**                                                                **Pages(s)**

Bobbitt by Bobbitt v. Rage Inc.,
     19 F.Supp.2d 512 (W.D.N.C. 1998)                            5, 7, 10

Brooks v. Collis Foods, Inc. ,
     365 F.Supp.2d 1342 (N.D.Ga 2005)                            7, 10

Christian v. Wal-Mart Stores, Inc.,
     252 F.3d 862 (6th Cir. 2001)                                   11

Daigle v. Friendly Ice Cream Corp.,
     957 F.Supp. 8 (D.N.H 1997)                                     11

Drayton v. Toys "R' Us Inc.,
     645 F.Supp.2d 149 (S.D.N.Y. 2009)                               8

Feacher v. Intercontinental Hotels Group,
     563 F.Supp.2d 389 (N.D.N.Y. 2008)                             4, 8

Foman v. Davis,
     371 U.S. 178 (1962)                                            14

Harrington v. Harris,
     108 F.3d 598 (5th Cir.1997)                                     6

Harvey v. Nyrac, Inc.,
     813 F.Supp. 206 (E.D.N.Y.1993)                                  4

Jackson v. Waffle House, Inc.,
     413 F.Supp.2d 1338 (N.D.Ga. 2006)                            7, 10

Laroche v. Denny's Inc.,
     62 F.Supp 1375 (S.D.Fla.1999)                                   7

McDonnell Douglas Corp. v. Green,
     411 U.S. 792 (1973)                                          4, 7

McPherson v. New York City Dep't of Educ,
     457 F.3d 211 (2d Cir. 2006)                                     5

<u>Mian v. Donaldson, Lufkin & Jenrette Securities,</u>
 7 F.3d 1085, 1087 (2d Cir.1993)          4

<u>Perry v. Burger King Corp.,</u>
 924 F.Supp 548 (S.D.N.Y. 1996)         9

<u>Phillips v. City of New York,</u>
 66 A.D.3d 170 (1st Dep't 2009)         13

<u>Shen v. A & P Food Stores,</u>
 1995 WL 728416 (E.D.N.Y. 1995)        4, 9

<u>Slocumb v. Waffle House, Inc.,</u>
 365 F.Supp.2d 1332 (N.D.Ga. 2005)       9, 10

<u>Vig v. The New York Hairspray Co.,</u>
 2009 Slip. Op. 6466 (1st Dep't 2009)       13

<u>Williams v. New York City Housing Authority,</u>
 61 A.D.3d 62 (1st Dep't 2009)         13

<u>Yeadon v. New York City Transit Authority,</u>
 719 F.Supp. 204 (S.D.N.Y 1989)        12

## PRELIMINARY STATEMENT

This is an action for equitable relief and to recover monetary damages for racial discrimination and Civil Rights violations suffered by plaintiffs, who were harassed, threatened and ejected from 230 Fifth, a place of public accommodation, based solely on their race. Plaintiffs are African-American.  Plaintiffs were forced to prepay $1,000 upon arrival, despite assurances that no deposit would be required when the reservation was made by phone.  From the moment they arrived, it was made clear to plaintiffs that they were not welcome due to their race.  Upon entry, plaintiffs were harassed, yelled at and ultimately ejected with no explanation beyond "your kind of people do not deserve to be here."  Plaintiffs were similarly situated to white patrons who were not subject to violent harassment and ejection.

## RELEVANT FACTS

On Saturday October 10, 2009, plaintiff Rainell Owens attempted to host a birthday party at the restaurant and lounge 230 Fifth. Two weeks prior Ms. Owens called 230 Fifth and made a reservation with a woman named Ruby for 25-30 people for October 10, 2009.  Complaint ¶¶ 25-26.

Ms. Owens gave Ruby her credit card information to hold the reservation. Ruby told Ms. Owens that she and her guests could pay cash during the party, she need not put down a deposit, and that she would be allowed to bring a birthday cake.  Complaint ¶¶ 27-28.

On Saturday October 10, 2009, the night of the planned party, Ms. Owens arrived around 8:30 PM at 230 Fifth.  She spoke to a hostess at the front door and informed her that she had made a reservation with someone named Ruby.  The hostess said that no reservation existed and

1

that no one named Ruby works there. The hostess said that she must have the wrong establishment and asked her to leave. Ms. Owens then called Ruby and told her that she is standing in front of the hostess. Ruby then said that they will create a reservation and assign her party a waitress. Complaint ¶¶ 29-34.

The waitress told Ms. Owens that she would need to start a tab on her credit card, and that there was a four bottle minimum at $250 per bottle. Ms. Owens was told that her credit card would be charged a minimum of $1,000 plus 10% of the entire party's tab to tip the waitress. Ms. Owens was told when she made the reservation two weeks prior that there would be no minimum and that her guests could pay in cash. The management and employees of 230 Fifth required a deposit from Ms. Owens when they realized that she and her guests were black. Complaint ¶¶ 35-37, 63.

Ms. Owens asked to speak to a manager, as she and many of her guests drove more than 90 minutes for this prearranged party and were never told about the four bottle minimum. A manager (a white male) came out and said extremely sarcastically that it is "funny" how they can't find the reservation and it is "funny" how no one told her that there's a four bottle minimum, and it is "funny" how no one named Ruby works there. Ms. Owens asked the manager if there is anything he can do, and he rudely said "nothing," and walked away. Ms. Owens told the waitress to process her card so her party could begin. Complaint ¶¶ 38-41.

About twenty minutes later one of Ms. Owens' guests pulled her aside and told her that management would not allow her to come upstairs with her birthday cake. When Ms. Owens originally made the reservation she specifically asked if they would be allowed to have a birthday cake and she was told it was okay. Complaint ¶¶ 41-43.

2

After a considerable delay, the manager came back and said they could bring up the cake. A few moments later the manager walked by and told Ms. Owens and her guests that they "have to hurry up and get rid of the cake."  Complaint ¶¶ 45-48.

 Ms. Owens told him that he just said it was okay to bring it in. The manager said, "Yeah but the owner thinks you people are going to mess up his furniture." Ms. Owens asked him what he meant by that considering the establishment serves food.  Complaint ¶¶ 50-51.

Moments later another manager (also white) came and told Ms. Owens and her guest that they must all sit down.  Other groups of white patrons nearby were not told they must sit.  White patrons were eating food on nearby sofas and were not harassed by management. Complaint ¶¶ 52-54.

The manager says very rudely that "you people" are becoming a problem and then walked away.   Shortly thereafter, the owner came by and began yelling at the two managers who came by previously.  He was pacing back and forth and screaming "these people were going to fuck up my $10,000 sofa!  These kind of people do not deserve to be here!"  Complaint ¶¶ 55-57.

Moments later one of the managers approached another manager and screamed, "Whatever you have to do, get those people out of here!  You fucking do it!  Give them their money back so they can get the fuck out!" Complaint ¶¶ 58.

Ms. Owens walked over to him in disbelief and asked why they were being thrown out. He merely said, "Fuck you!  You people don't deserve to be here." Complaint ¶ ¶ 59-60.

Ms. Owens and her guests, the other named plaintiffs, were forced to leave. At no time did any owner, manager, employee, agent or servant of 230 Fifth provide any non-discriminatory explanation for their racially discriminatory pricing, harassment, refusal of service and expulsion

of plaintiffs.  Complaint ¶ ¶ 61-62.

## ARGUMENT

**I.**     **Plaintiffs have adequately pleaded their § 1981 claim**

To state a claim under Section 1981 "plaintiffs must allege facts in support of the following three elements: (1) they are members of a racial minority; (2) an intent to discriminate on the basis of their race by defendant; and (3) the discrimination concerned on or more activities enumerated in . . . § 1981, e.g., making contracts or the purchase of personal property." Shen v. A & P Food Stores, WL 728416 (E.D.N.Y. 1995) (citing Mian v. Donaldson, Lufkin & Jenrette Securities, 7 F.3d 1085, 1087 (2d Cir.1993).

Defendants do not dispute that plaintiffs are members of a racial minority.  To satisfy the second element, plaintiffs must allege that defendants' actions were purposefully discriminatory and racially motivated.  Id. at 3.  Plaintiff may "rely on direct or circumstantial evidence," to demonstrate purposeful discrimination. Id. at 3. "Moreover, plaintiffs may establish that they were subject to racial discrimination through any evidence logically supporting an inference of that intent." Id. at 3 (quoting Harvey v. Nyrac, Inc., 813 F.Supp. 206, 209 [E.D.N.Y.1993]).

Ultimately a § 1981 claim is reviewed under the three-step, burden shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Feacher v. Intercontinental Hotels Group, 563 F.Supp.2d 389 (N.D.N.Y. 2008).  Under this framework, plaintiff bears the initial burden of presenting a prima facie case of discrimination. Id. at 402.  "A plaintiff's burden in presenting prima facie evidence of discriminatory treatment is minimal." Id. at 402 (quoting McPherson v. New York City Dep't of Educ, 457 F.3d 211 (2d

4

Cir. 2006). One way a plaintiff can establish a prima facie case of discrimination is to show they were treated differently than similarly situated individuals of another race. Id. at 402. For the purpose of surviving a motion to dismiss, a plaintiff "need only allege facts sufficient to state a claim regarding its prima facie case." Bobbitt by Bobbitt v. Rage Inc., 19 F.Supp.2d 512 (W.D.N.C. 1998).

Here, plaintiffs contracted with defendant 230 Fifth to have a birthday party for Rainell Owens. When Ms. Owens made the reservation she gave her credit card to hold the reservation and was told that "her guest could pay cash during the party, she need not put down a deposit, and that she would be allowed to bring a birthday cake." Complaint ¶ 28. When her party arrived, and defendants realized that her group was black, the hostess denied having a reservation. Complaint ¶ ¶ 31-32, 63. When defendants finally agreed to honor the reservation, Ms. Owens was told that her credit card would be charged a minimum of $1,000, despite the fact she was promised that no or minimum was required. Complaint ¶ 36. These facts support an inference of defendants' intent to discriminate against plaintiffs as to their right to contract, due to their race.

When Ms. Owens' guest entered the establishment, they were subject to immediate hostility from managers at 230 Fifth. A manager yelled at plaintiffs, ordering them to all sit. Complaint ¶ 52. At the same time, groups of white patrons standing next to plaintiffs' group were never told they must sit. Complaint ¶ 53. Plaintiffs were also screamed at about eating the birthday cake they had brought, which they were told when making the reservation that they could have. White patrons were eating on nearby sofas and were not harassed by management. Complaint ¶ 54. In fact, the establishment served food to people seated on sofas. Complaint ¶

51. The managers continued to aggressively harass plaintiffs, referring to them as "you people." Complaint ¶¶ 50, 55.  Shortly thereafter, the owner arrived and screamed at plaintiffs, "these people are going to fuck up my $10,000 sofa!  These kind of people do not deserve to be here!" Complaint ¶ 57.  One of the managers ejected plaintiffs from the premises.  When asked why they were being forced to leave the manager gave no explanation beyond saying, "Fuck you! You people don't deserve to be here."

These facts easily provide sufficient support for a prima facie case of discrimination. While most cases rely only on circumstantial evidence, here plaintiffs have provided direct evidence.  Harrington v. Harris, 108 F.3d 598, 606 (5th Cir.1997) ("The plaintiff may establish a prima facie case by direct evidence, or, more commonly, by circumstantial evidence of discriminatory motive").  The manager's use of the term "you people" in combination with his unjustified and unexplained hostile demeanor is evidence of racial animus.  Likewise, the owner's statement "these kind of people do not deserve to be here!" is strong evidence of racial animus.

Defendants claim in their motion to dismiss that the complaint does not allege that defendants treated similarly-situated patrons differently.  They are wrong.  The facts in the complaint establish that plaintiffs were treated differently than white patrons similarly situated. White patrons in the immediate vicinity to plaintiffs were not harassed about eating on sofas, nor were they told they must sit down.  No white patrons were ejected from the club with no explanation beyond being told, "these kind of people do not deserve to be here!"

Furthermore, the mere fact that plaintiffs were yelled at; told that "their kind of people do not deserve to be there"; that their reservation was initially not honored; that they were

6

inexplicably harassed for eating and standing (despite the presence of white patrons doing the

exact same thing); and were ejected from the premises with no explanation, gives rise to

inference that they were discriminated against.  See <u>Brooks v. Collis Foods, Inc.</u> , 365 F.Supp.2d

1342 (N.D.Ga 2005):

> While a plaintiff may not state a civil rights violation for every indignity suffered in the
> course of daily life, a restaurant and its employees may not evade liability under § 1981
> because the defendant has devised creative means to harass and intimidate customers.
> "Discrimination is often simply masked in subtle forms and it is always easier to assume
> a less odious intention to what is in reality discriminatory behavior." *Laroche v.
> Denny's Inc.,* 62 F.Supp.2d 1375, 1384 (S.D.Fla.1999). To adopt a test that requires a
> plaintiff to come forward with similarly situated individuals would fail to acknowledge
> that a defendant could subject a plaintiff to treatment so hostile and intimidating that the
> plaintiff should be permitted the inference of discrimination that a prima facie case
> creates.

The complaint also states that 230 Fifth uses discriminatory pricing to discourage black

customers from entering.  Complaint ¶ 64.  This can logically be inferred from the fact that when

Ms. Owens made the reservation, she was told there was no minimum and was not told she had

to put down a deposit; yet when her group arrived and defendants saw here party was black,

suddenly a $1,000 minimum charge was required.  Compliant ¶ 14-15.  Unfortunately, requiring

black patrons to prepay or pay exorbitant entrance fees is a common tactic employed by

restaurants or bars that wish to exclude African-Americans.  See e.g. <u>Jackson v. Waffle House,

Inc.,</u> 413 F.Supp.2d 1338 (N.D.Ga. 2006); <u>Bobbitt by Bobbitt v. Rage Inc.,</u> 19 F.Supp.2d 512

(W.D.N.C.1998).  Plaintiffs have met there burden in pleading a prima facie case in regards to

this required prepayment.   Under <u>McDonnell Douglas</u> burden shifting framework, the fact that

230 Fifth had no requirement that all groups prepay (evidenced by the agreement Ms. Owens had

when she made the reservation), but required Ms. Owens' group to prepay when they realized

they were African-American satisfies plaintiff initial burden.  It then becomes 230 Fifths burden

to provide a non-discriminatory reason for having required a prepayment in this case.

Plaintiffs have also stated an equal benefit claim under Section 1981.  "An equal benefit

claim under Section 1981 requires proof that [i] the plaintiff is a member of a racial minority, [ii]

the defendants intended to discriminate on the basis of race, and [iii] the discrimination concerns

one of the statute's enumerated activities."  Drayton v. Toys "R' Us Inc., 645 F.Supp.2d 149

(S.D.N.Y. 2009) (internal quotation omitted).  One of enumerated activities under Section 1981

is the "full and equal benefit of all laws and proceedings for the security of persons and

property."  As in Drayton, at 159, plaintiffs have alleged that defendants deprived them of the full

and equal benefit of New York State Executive Law § 296 which prohibits racial discrimination

in places of public accommodation.

Courts have refused to dismiss cases involving discrimination on far weaker facts.  In

Feacher v. Intercontinental Hotels Group, 563 F.Supp.2d 389 (N.D.N.Y. 2008), plaintiffs

claimed "they were denied entrance into the restaurant while two Caucasian couples were seated

in the restaurant."  When plaintiffs asked why two Caucasian couples were allowed in, a

restaurant employee replied, "We're closed for you." The Court, on a motion for summary

judgment where plaintiff's burden is higher, held that a reasonable fact finder could conclude that

under these facts, the denial of service in a restaurant was motivated by race.  Id. at 403.  The

Court also held that on a separate occasion "where plaintiffs alleged that they were subjected to

racial slurs and had their omelets thrown in the garbage, they have established a prima facie case

of discrimination." Id. at 404.

In Shen v. A & P Food Stores, 1995 WL 728416 (E.D.N.Y. 1995) the court held that the

following allegations were sufficient to withstand a motion to dismiss:

> Plaintiffs' complaint alleges instances of purposeful discrimination, as well as racial animus, sufficient to state a claim under §§ 1981 and 1982. In light of plaintiffs' description of the events that took place, it can be inferred that A & P's actions were racially motivated. In sum, the complaint alleges the following events, which the Court must assume to be true for purposes of this motion. Plaintiffs' allege that an A & P cashier and manager verbally abused them the second time they attempted to purchase apple juice, and also ordered them to shop at a Chinese-run supermarket. Plaintiffs further allege that during this incident one A & P employee "rushed out from the office and shouted to a plaintiff 'Go back China.' " In addition, when plaintiffs attempted to obtain advertisements from the supermarket the following day, the same cashier "shouted to one plaintiff 'Get out of here' and used a dirty gesture." Finally, they allege that similar conduct was displayed towards one of the plaintiffs "many times before."

In Perry v. Burger King Corp., 924 F.Supp 548 (S.D.N.Y. 1996) the Southern District of

New York held that the following allegations were sufficient to withstand a motion to dismiss:

> [Plaintiff] after eating at the Burger King, asked for the key to the rest room, but alleges he was told that the bathroom was out of order and was shown signs to that effect. Perry then asserts that he saw white patrons leaving the rest room, and again requested the bathroom key, but was denied once more. He states that employees of the restaurant then made "racially-based offensive comments," and after another white patron emerged from the rest room,  plaintiff states he held open the door and observed that the facilities were in working order.  Id. at 551.

In Slocumb v. Waffle House, Inc., 365 F.Supp.2d 1332 (N.D.Ga. 2005) the Court refused

to grant defendant restaurant summary judgment, finding plaintiffs had established a prima facie

case for discrimination under the following facts:

> Plaintiffs have presented evidence that several groups of white patrons entered the Darien Waffle House while Mr. Slocumb waited by his uncleared table. These patrons' tables were cleared, their orders were taken, and they were served with the food they ordered. While Defendant is correct that none of the white groups was as large as the Slocumbs, this does not affect the validity of the comparison between the groups in this case. The difference in group size between the white patrons and the Slocumbs is not material where the servers who attended to the white patrons could also have attended to the Slocumbs. This is not a situation where the only available seating was for a smaller group. Instead, viewing the evidence in the light most favorable to Plaintiffs, both the Slocumbs and the white groups acted similarly in attempting to be served at the Darien Waffle House. However, only the white groups had their tables cleaned, orders taken, or

food served. Plaintiffs have produced sufficient evidence that Defendant treated the
Plaintiffs less favorably than the Defendant treated other similarly situated persons who
were outside Plaintiffs' protected class. Id. at 1339.

In <u>Bobbitt by Bobbitt v. Rage Inc.</u>, 19 F.Supp.2d 512 (W.D.N.C.1998) the Court held that

African American plaintiffs' allegations that they were forced to prepay before eating at a Pizza

Hut restaurant because a manager stated that "three black teenagers had run out without paying

the day before," sufficiently stated a prima facie claim for discrimination. Id. at 520.

In <u>Jackson v. Waffle House, Inc.</u>, 413 F.Supp.2d 1338 (N.D.Ga. 2006) the court held that

plaintiff established a prima facie case for discrimination under § 1981 where he was forced to

prepay at a restaurant while later arriving white customers were not:

> Waffle House argues that Jackson cannot establish that a similarly-situated white
> customer was treated better than Jackson was. Waffle House argues that none of the three
> allegedly later-arriving white customers who placed to-go orders but were not required to
> prepay were not similarly situated to Jackson because none of these customers wore the
> "gangster rap attire." In response, Jackson argues that the comparators do not have to be
> exact matches of him. The court agrees and finds the significant material facts of
> Jackson's transaction to be that several white individuals placed to-go orders after Jackson
> and that they were not asked to prepay, while Jackson, an African-American, was asked
> to prepay. Therefore, the court concludes that Jackson has established a prima facie case
> of his § 1981 claim. Id. at 1358-1359.

In <u>Brooks v. Collis Foods, Inc.</u>, 365 F.Supp.2d 1342 (N.D.Ga. 2005) the Court held that

African-American plaintiffs established a prima facie case for discrimination under § 1981

where:

> Plaintiffs requested a booth, but were seated at a counter so that white customers could be
> seated in the booth. A waitress spilled orange juice on them, flung straws at them and
> Plaintiffs received their food after a one hour and ten minute wait, while white customers
> were able to receive and complete their meals during this time. Defendant argues that the
> white customers were not similarly situated because they could have placed different
> orders. Plaintiffs indicate, however, that there is no item at the Blue Ridge Waffle House
> that takes more than eight minutes to prepare. Based on Plaintiffs' allegations that they
> were the only African-Americans in the restaurant, and they consistently received poor

service and were denied benefits as compared to white customers, the Court finds that Plaintiffs' have stated a prima facie case of discrimination. Id. 1358.

In Christian v. Wal-Mart Stores, Inc., 252 F.3d 862 (6th Cir. 2001) the Court held that an African American plaintiff subject to surveillance at a Wal-Mart established a prima facie case for discriminate under § 1981 at trial when the following evidence was presented:

> We believe that the testimony could have produced the following reasonable inferences regarding Monnot's [a security guard] discriminatory acts: 1) Monnot watched and followed Christian [a black shopper] but not Edens [a white shopper] despite the fact that Christian had a shopping cart while Edens was shopping without a cart; 2) Monnot offered Christian assistance six times, but never offered to assist Edens; 3) Monnot commenced to watch Edens after realizing that the two women were together; 4) Monnot reported to her manager that she witnessed a shoplifting incident, which did not occur; and 5) Monnot directed the police to remove Edens from the store because she was with Christian. Id. at 875.

## II.    Plaintiffs adequately pleaded their Section 2000a claim

Defendants do not site Second Circuit precedent for the proposition that notice to state authority is a jurisdictional prerequisite for an action under Section 2000a and plaintiffs do not concede this.

Nonetheless, plaintiffs provided notice to the New York Attorney General's Office, Civil Rights Bureau of this suit.  The New York Attorney General is an appropriate state authority under Section 2000a-3(c).  See Daigle v. Friendly Ice Cream Corp., 957 F.Supp. 8 (D.N.H 1997):

> This court finds that the letter sent to the attorney general constitutes written notice to an "appropriate state authority" in satisfaction of section 2000a-3(c). Even though the Commission for Human Rights administers the anti-discrimination law, the attorney general is, nonetheless, an "appropriate state authority" under section 2000a-3(c). The purpose of the notice requirement is to give the state the first opportunity to remedy the alleged discrimination. Since the attorney general may file a complaint with the Commission on Human Rights, notice to the attorney general gives the state an opportunity to address and remedy alleged violations of the New Hampshire anti-discrimination law. There is no apparent justification for not treating the attorney general as an "appropriate state authority."

11

As to defendants' substantive argument, claims under Section 2000a are examined under the same standards at Section 1981 claims.  See e.g. <u>Feacher v. Intercontinental Hotels Group</u>, 563F.Supp.2d 389 (N.D.N.Y. 2008); <u>Lizardo v. Denny's</u>, 270 F.3d 94, 106 (2d Cir. 2001). Plaintiffs' therefore rely on their argument under the Section 1981 claim.

### III.  **Plaintiffs adequately pleaded their Section 1985 and 1986 claims**

Plaintiffs alleged in their complaint that "the owners, manager and employees of 230 Fifth use intimidation, harassment, denial of service, discriminatory billing practices, and outright expulsion as means to prevent African-Americans from patronizing 230 Fifth." Complaint ¶ 71.  Furthermore, plaintiffs alleged that two managers and the owner of 230 Fifth acted in concert to discriminate against plaintiffs.  Complaint ¶¶ 48-60.

Because plaintiffs have alleged a series of separate discriminatory acts, the intra-corporate immunity doctrine does not apply.  <u>Yeadon v. New York City Transit Authority</u>, 719 F.Supp. 204 (S.D.N.Y1989) ("Neither does the defense that a single corporation and its employees cannot conduct a conspiracy shield defendants from potential liability under either § 1985 or § 1986, because plaintiffs have adequately alleged a series of separate discriminatory acts by the corporate entity and its agents.")

### IV.  **Defendants do not challenge plaintiffs' breach of contract claim**

Plaintiffs assert a breach of contract claim between Rainell Owens and 230 Fifth in their eleventh cause of action.  Complaint ¶ 114.  Because defendants do not address this claim, it

should not be dismissed.

Rainell Owens contracted with 230 Fifth to host her birthday party on October 10, 2009 and left her credit card information to hold this reservation. Complaint ¶¶ 26-27. In reliance on this agreement, Ms. Owens invited 25-30 friends, many of whom had to travel long distances to attend. Complaint ¶ 26. 230 Fifth breached this agreement when they ejected Ms. Owens and her invited guest with no justification.

## V.     <u>Section 1988</u>

Plaintiffs reserve their right to move for attorneys' fees if they prevail in any part of this action, as they are entitled to under 42. U.S.C. Section 1988.

## VI.    <u>Plaintiffs have adequately pleaded a cause of action under New York Civil Rights Law Section 40 et seq., New York Executive law Section 296 and the New York City Commission on Human Rights</u>

Because plaintiffs have adequately pleaded discrimination under Section 1981, they have also met the pleading standards of these state and local statutes. Moreover, New York City's 2005 Local Civil Rights Restoration Act amended the City's Human Rights Laws so that their construction would be more expansive and remedial than, and independent of, its federal and state counterparts. <u>Williams v. New York City Housing Authority</u>, 61 A.D.3d 62 (1st Dep't 2009) (rejecting, among other things, the requirement that sexual harassment be severe and pervasive). The Restoration Act mandates that state and federal provisions should be viewed "as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise." Id. at 66-67 (quoting § 1 of the City's Human Rights Law). See also <u>Phillips v. City of New York</u>, 66 A.D.3d 170 (1st Dep't 2009); <u>Vig v. The New York Hairspray Co.</u>, 2009 Slip. Op. 6466 (1st Dep't 2009). In light of the Restoration Act, the pleading standard

13

under the New York City Human Rights Law is more expansive than federal or state law.  Under this more lenient and remedial standard, plaintiffs have cleared their pleading burden by an even greater margin.

**VII.**   **Request for leave to amend complaint**

Should this Court find that plaintiff has not adequately pleaded any of its causes of action, plaintiffs respectfully request leave to amend their complaint.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) ("Leave to amend should be freely granted when justice so requires, Fed.R.Civ.P. 15(a)(2), and should not be denied [i]n the absence of ... undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

**CONCLUSION**

For the reasons set forth herein, defendant's motion to dismiss plaintiffs' verified complaint should be denied in its entirety.

Dated: New York, New York
       April 18, 2011

Jesse M. Young, Esq.
Bader Yakaitis & Nonnenmacher
Attorneys for Plaintiffs
350 Fifth Ave, Suite 7210
New York, New York 10118
(212) 465-1110

14